IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 23-cv-00629-PAB-STV

ELIZABETH MARTIN-HARKER,

      Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

      Defendant.

---

## ORDER

---

      This matter comes before the Court on Plaintiff Elizabeth Martin-Harker's Motion for Partial Summary Judgment [Docket No. 64] and Defendant's Motion for Summary Judgment on Plaintiff's Second and Third Claims for Relief [Docket No. 66].

      On July 12, 2024, defendant State Farm Mutual Automobile Insurance Company ("State Farm") filed a response to Ms. Martin-Harker's motion for partial summary judgment.  Docket No. 76.  On July 26, 2024, Ms. Martin-Harker filed a reply.  Docket No. 83.  On July 2, 2024, Ms. Martin-Harker filed a response to State Farm's motion for partial summary judgment.  Docket No. 73.  On July 16, 2024, State Farm filed a reply. Docket No. 77.

### I.    FACTS[1]

      On December 21, 2021, Ms. Martin-Harker was waiting to turn left at an intersection when she was rear-ended by another vehicle.  Docket No. 66 at 3, ¶ 1.  At

---

[1] The following facts are undisputed unless otherwise noted.

the time of the accident, Ms. Martin-Harker was insured with State Farm.  Docket No. 64
at 2, ¶ 3.  Under her policy, Ms. Martin-Harker had $100,000 in underinsured motorist
("UIM") coverage.  *Id*.  The at-fault driver was insured under a policy that had a bodily
injury limit of $100,000.  Docket No. 66 at 3, ¶ 2.

On December 21, 2021, Ms. Martin-Harker went to urgent care where the
following clinical notes were recorded:

> Patient presents with complaint headache with left shoulder pain status post
> MVA.  Patient was stopped at a red light when she was rear-ended by a drunk
> driver per patient.  This happened approximately 15 minutes prior to arrival.
> Patient reports that she went forward and then hit the back of her head on the
> seat with great force.  Patient states she feels "shaky", Denies dizziness, vision
> changes, numbness or tingling to extremities.  No airbag deployment.  Patient
> was wearing seatbelt.  Denies nausea, vomiting since incident.  Left shoulder
> pain is constant Dull, ache.  Non-radiating.  Pain rates 1-2/10.  Headache is
> constant.  Non radiating.  Pain rates 8/10.  Has not taken any OTC medications.

Docket No. 66 at 3, ¶ 4. [2]  The urgent care clinical notes listed Ms. Martin-Harker's
"Chief Complaint" as "MVA - headache, R shoulder pain, hit head on steering wheel,
cold and shakiness x15 min ago.  Rear end at stop sign, no airbags."  *Id*., ¶ 5.  No
physical examination or x-ray was performed on Ms. Martin-Harker's right shoulder.
*Id*.at 4, ¶¶ 8, 10.

On December 27, 2021, Ms. Martin-Harker returned to urgent care complaining
of worsening right shoulder pain.  *Id*., ¶ 12.  X-rays were taken.  *Id*.  On February 11,

---

[2] Ms. Martin-Harker denies this fact arguing that "this statement of fact is
inaccurate, omits critical content and is therefore denied as written."  Docket No. 73 at
2, ¶ 4.  Ms. Martin-Harker does not explain what information is inaccurate or omitted
and cites no evidence to support her denial.  *See* Practice Standards (Civil cases),
Chief Judge Philip A. Brimmer, § III.F.3.b.iv ("Any denial shall be accompanied by a
**brief** factual explanation of the reason(s) for the denial and a **specific reference** to
material in the record supporting the denial."); Fed. R. Civ. P. 56(c)(1)(A).  The Court
therefore deems this fact admitted.

2

2022, an MRI was performed on Ms. Martin-Harker's right shoulder revealing moderate to severe tendinosis and a "SLAP"[3] tear of the labrum.  *Id.*, ¶ 13[4]; Docket No. 64 at 2, ¶ 4.  On April 6, 2022, Dr. Mark Grossnickle performed surgery on Ms. Martin-Harker's right shoulder to repair her rotator cuff and SLAP tear and remove bone spurs impinging on her shoulder anatomy.  Docket No. 66 at 4, ¶ 14; Docket No. 64 at 2, ¶ 5.

On May 23, 2022, Ms. Martin-Harker submitted a letter to State Farm[5] demanding that it tender payment for the following: $41,505.80 in medical expenses, including the surgery on Ms. Martin-Harker's right rotator cuff tear and SLAP lesion, and $1,827 in lost wages with an anticipated continuous loss of wages at $78 per day.[6] Docket No. 66 at 5, ¶ 16.  In the letter, Ms. Martin-Harker asked that State Farm tender the UIM "benefits owed."  *Id*.  On June 8, 2022, State Farm responded to Ms. Martin-Harker's demand letter and advised her that State Farm needed additional information to determine whether her right shoulder surgery was related to the December 21, 2021 accident.  *Id.*, ¶ 17.  State Farm requested five years of Ms. Martin-Harker's prior medical records, a signed medical authorization, and a list of Ms. Martin-Harker's medical providers before and after the accident.  *Id*.  In its letter, State Farm noted that Ms. Martin-Harker's right shoulder was not referenced in her first two visits following the

---

[3] "SLAP" is an acronym for "Superior Labrum, Anterior to Posterior."  *See American Academy of Orthopaedic Surgeons, OrthoInfo*, "SLAP Tears," https://orthoinfo.aaos.org/en/diseases--conditions/slap-tears/.
[4] Ms. Martin-Harker admits this fact, but notes that Docket No. 67-3 at 1, which State Farm cites as evidence for its assertion, states that the MRI revealed a *SLAP* tear of the labrum.  Docket No. 73 at 3, ¶ 13.
[5] Counsel for Ms. Martin-Harker corresponded with State Farm on her behalf.  *See*, *e.g.*, Docket No. 66-2.
[6] Neither party addresses any claims related to Ms. Martin-Harker's demand for UIM benefits for lost wages.

December 21, 2021 accident.  *Id*.  Furthermore, State Farm noted that Ms. Martin-Harker previously received treatment with medication for her right shoulder problems and that radiographs showed degenerative findings.  *Id*.  State Farm advised that it would need a utilization review and/or independent medical examinations.  *Id*.  In a June 9, 2022 letter to State Farm, Ms. Martin-Harker noted that there was a reference to "R shoulder pain" in Ms. Martin-Harker's December 21, 2021 urgent care records.  *Id*., ¶ 18.  Linda Kerns, the claims adjuster handling Ms. Martin-Harker's case, made no attempt to speak with the medical provider who saw Ms. Martin-Harker on December 21, 2021 and "try to understand the significance of the medical record" that referenced "R shoulder pain."  Docket No. 73 at 5, ¶ 9.  Ms. Kerns never spoke with Ms. Martin-Harker.  *Id*., ¶ 8.

On June 17, 2022, Ms. Martin-Harker provided a signed medical authorization and a list of providers to State Farm.  Docket No. 66 at 6, ¶ 19.  In July and August 2022, State Farm used Ms. Martin-Harker's authorization to request her medical records.  *Id*., ¶ 20.  On July 20, 2022, after a poor outcome from the first surgery, Dr. Grossnickle performed another right shoulder surgery to repair Ms. Martin-Harker's biceps tendon.  *Id.* at 5, ¶ 15; Docket No. 64 at 2, ¶ 5.

On September 12, 2022, Ms. Martin-Harker submitted a demand that State Farm "tender all benefits owed," identifying $62,999.74 in medical expenses.  Docket No. 66 at 6, ¶ 21.  The "vast majority" of the medical expenses were those incurred for Ms. Martin-Harker's right shoulder surgeries.  *Id*.  On October 7, 2022, State Farm advised that it would proceed with a "Utilization Review" to determine if Ms. Martin-Harker's shoulder surgeries were related to the December 21, 2021 accident.  *Id*., ¶ 22.  Ms.

Martin-Harker asked why State Farm had not spoken to her treating providers and asked who would perform the utilization review. *Id.*, ¶ 23. On October 11, 2022, State Farm responded that it was "not aware of the provider as it was being sought through an independent medical vendor." *Id.* at 6–7, ¶ 24. [7] State Farm noted that there were "several treating providers and shoulder pain noted as far back as 2018," and as such, "felt it best to have the records reviewed by an independent party with all of the records to opine on causation." *Id.* [8]

On November 2, 2022, State Farm received Dr. Philip A. Stull's utilization review in connection to the independent medical review. *Id.* at 7, ¶ 25; Docket No. 64 at 3, ¶ 7. Dr. Stull is a non-treating physician who had no doctor-patient relationship with Ms. Martin-Harker. Docket No. 64 at 3, ¶ 6. Dr. Stull reviewed Ms. Martin-Harker's medical records from before and after the accident, as well as photographs. Docket No. 66 at 7, ¶ 26. [9] Dr. Stull opined that the cause of Ms. Martin-Harker's "right shoulder condition"

---

[7] Ms. Martin-Harker denies this fact arguing that "this statement of fact is inaccurate, omits critical content and is therefore denied as written." Docket No. 73 at 4, ¶ 24. Ms. Martin-Harker does not explain what information is inaccurate or omitted and cites no evidence to support her denial. *See* Practice Standards (Civil cases), Chief Judge Philip A. Brimmer, § III.F.3.b.iv ("Any denial shall be accompanied by a **brief** factual explanation of the reason(s) for the denial and a **specific reference** to material in the record supporting the denial."); Fed. R. Civ. P. 56(c)(1)(A). The Court therefore deems this fact admitted.

[8] The Court deems this fact admitted for the same reason described in *supra* n.7

[9] Ms. Martin-Harker denies this fact arguing that "this statement of fact is inaccurate, omits critical content and is therefore denied as written" and that the opinion contains "NO opinion on the causation of the SLAP tear." Docket No. 73 at 4, ¶ 26. This is not a denial of State Farm's asserted facts. Ms. Martin-Harker does not explain why Dr. Stull's alleged failure to opine on the cause of the SLAP tear means that State Farm's assertion of fact is "inaccurate" or "omits critical content." *See* Practice Standards (Civil cases), Chief Judge Philip A. Brimmer, § III.F.3.b.iv ("Any denial shall be accompanied by a **brief** factual explanation of the reason(s) for the denial and a **specific reference** to material in the record supporting the denial."); Fed. R. Civ. P.

was "repetitive use, activity, and aging," which he referred to as "common conditions of

the shoulder" and was not caused by motor vehicle accident. *Id*.[10] Dr. Stull noted that,

although Ms. Martin-Harker went to urgent care the day after the December 21, 2021

accident, the right shoulder was not evaluated until December 27, 2021. *Id*.[11] Dr. Stull

explained that, if Ms. Martin-Harker "sustained the claimed shoulder injury in the

accident, she undoubtedly would have complained of immediate onset of right shoulder

symptoms." *Id*.[12] Dr. Stull stated that Ms. Martin-Harker's MRI imaging of her right

shoulder showed "objective evidence of chronic impingement and common shoulder

conditions associated with aging and repetitive activity, and generally not associated

with an injury from a motor vehicle accident." *Id*.[13] On November 7, 2022, State Farm

sent Dr. Stull's report to Ms. Martin-Harker, advised her that her claim was evaluated

within the $100,000 liability limit, and that State Farm would not consider the right

shoulder surgeries and associated treatment as being related to the accident. *Id*., ¶ 27.

On November 15, 2022, Ms. Martin-Harker sent State Farm a letter arguing that

State Farm acted in bad faith by hiring Dr. Stull, who Ms. Martin-Harker alleged

"routinely testifies" for State Farm, to perform the evaluation. *Id*. at 8, ¶ 28. In that

letter, Ms. Martin-Harker demanded that State Farm pay $100,000 in UIM benefits by

---

56(c)(1)(A). The Court therefore deems this fact admitted, namely, that Dr. Stull's report
expressed the opinion asserted in Docket No. 66 at 7, ¶ 26.

[10] The Court deems this fact admitted for the same reason described in *supra*
n.9.

[11] The Court deems this fact admitted for the same reason described in *supra*
n.9.

[12] The Court deems this fact admitted for the same reason described in *supra*
n.9.

[13] The Court deems this fact admitted for the same reason described in *supra*
n.9.

November 28, 2022. *Id*.; Docket No. 64 at 3, ¶ 8. Ms. Martin-Harker attached a form

from Dr. Grossnickle, dated November 14, 2024, that stated the "accident caused or

contributed to an injury to Plaintiff's right shoulder and the need for surgery." Docket

No. 64 at 3, ¶ 9; Docket No. 66 at 8, ¶ 29.

In a letter dated November 15, 2022, Ms. Martin-Harker attached medical

records from her visit with Dr. Grossnickle on November 14, 2022. Docket No. 64 at 3,

¶ 10; Docket No. 66 at 8, ¶ 29. In the records, Dr. Grossnickle stated the following:

> Of note is she was involved in a motor vehicle accident where she was rear-ended in December 21, 2021. She was immediately seen in an urgent care center where they did radiographs of her shoulder and documented new onset shoulder pain. She [sic] subsequently seen by me at our next available visit in February with continued shoulder pain. At that point an MRI diagnosed a displaced SLAP lesion. This necessitated her going through surgery to repair the SLAP which unfortunately failed and required a second surgery for the subpectoral biceps tenodesis. At this point, she is progressing quite well through her exercise program. Her symptoms are markedly improved. She is regaining her bicep strength. She can go back to resume activity on an as needed basis. I have no specific restrictions. She will continue her home exercise program. Follow-up as needed.

Docket No. 66 at 8, ¶ 29. On November 21, 2022, State Farm responded to Ms. Martin-

Harker with the following:

> Thank you for the additional information. To address your November 15, 2022 letter, we respectfully disagree that it is bad faith to hire Dr. Stull. We also disagree that our position to not consider the right shoulder is solely due to Dr. Stull's report. We also have no knowledge that Dr. Stull's opinions are not independent.
>
> The independent review is a tool and part of our investigation. Prior to the review, we had a causation concern for a shoulder injury in a rear end loss. Moreover, the right shoulder was an initial complaint in Ms. Harker's December 21, 2021 Urgent Care visit. The MRI findings included conditions that are chronic that do not result from an acute injury caused by a motor vehicle accident. We also felt it was best to have an opinion based on a complete set of records. Was Dr. Grossnickle aware of the right shoulder complaints prior to the accident? Was he aware that Ms. Harker did not initially report the right shoulder in her 1st UC Health visit of December 21, 2021?

> We will send the new information to get an Addendum Report and to see if Dr. Stull's opinion changes. However, we will be unable to tender limits by your requested date based on the information we have to date and the time it takes to obtain an addendum report.
>
> We remain open to additional information.

Docket Nos. 64-14, 66-14. [14] On November 22, 2022, Ms. Martin-Harker sent a letter to State Farm that contended State Farm had more than enough documentation needed to tender the UIM benefits. Docket No. 66 at 9, ¶ 31. Ms. Martin-Harker asked State Farm why it did not contact Dr. Grossnickle directly and how long it would take to get an addendum from Dr. Stull. *Id*.; Docket No. 64 at 3, ¶ 12. On November 30, 2022, State Farm stated that it disagreed that the UIM benefits should be tendered based on the information available and that State Farm had provided Dr. Grossnickle's "causation opinions" to Dr. Stull. Docket No. 66 at 9, ¶ 32.

On December 1, 2022, Ms. Martin-Harker wrote another letter to State Farm noting that it was unclear why State Farm would not contact Dr. Grossnickle directly. *Id*., ¶ 33. Ms. Martin-Harker attached a narrative from Dr. Grossnickle that stated the following:

> Elizabeth has been treated for a SLAP tear that resulted from a motor vehicle accident in December 2021. This was proven under MRI scanning. I have reviewed her medical records which shows 1 entry from a primary care resident left shoulder pain after she was moving of the right shoulder back in November 2020. I feel unlikely that she had a [sic] evolving SLAP lesion in November 2020

---

[14] The parties dispute the characterization of the November 21, 2022 letter. *See* Docket No. 64 at 3, ¶ 11 (asserting that State Farm denied Ms. Martin-Harker's claim in this letter); Docket No. 76 at 3, ¶ 11 (disputing Ms. Martin-Harker's characterization of the letter a denial and asserting instead that the letter advised that State Farm "would not be able to tender limits by the requested date based on the information available, and as State Farm was awaiting addendum from Dr. Stull to address Dr. Grossnickle's opinion"). However, the parties do not disagree on the content of the November 21, 2022 letter. Therefore, the Court will deem the content of the letter as admitted.

that took a year and a half to become symptomatic.  I feel it is much more likely
that the SLAP lesion was a result of her motor vehicle accident.

Docket No. 64 at 3, ¶ 14; Docket No. 66 at 9, ¶ 34. [15]  Ms. Martin-Harker further

demanded that State Farm tender the $100,000 UIM benefits by December 12, 2022.

Docket No. 64 at 3, ¶ 13.

On December 5, 2022, Dr. Stull provided an addendum in which he noted that he

reviewed additional records and Dr. Grossnickle's December 1, 2022 letter.  Docket

No. 66 at 9–10, ¶ 35.  Dr. Stull stated that his opinions remained unchanged for reasons

explained previously in his first report.  *Id*.  On December 6, 2022, State Farm sent a

letter to Ms. Martin-Harker with Dr. Stull's addendum attached.  *Id*. at 10, ¶ 36.  In that

letter, State Farm made its coverage decision and rejected Ms. Martin-Harker's demand

for UIM benefits and noted that State Farm still felt it best to have an opinion based on a

complete set of records.  Docket No. 64 at 3, ¶ 15; Docket No. 66 at 10, ¶ 36.  The letter

stated, in relevant part:

> The Utilization report indicated etiology of the diagnosed injuries of rotator cuff
> tendinitis, subacrominal spurring and AC joint arthritis are common orthopedic
> conditions of the shoulder caused by repetitive activity and aging.  There were
> right shoulder conditions dating back to November 2020.  The reason for surgery
> were due to objective findings of chronic impingement, AC joint degenerative
> arthritis and rotator cuff tendonitis which are conditions not acutely associated
> with a motor vehicle accident.  Ms. Harker did not complain about the right
> shoulder immediately after the motor vehicle accident.

---

[15] The parties dispute the characterization of the November 21, 2022 letter.  *See*
Docket No. 64 at 3, ¶ 11 (asserting that State Farm denied Ms. Martin-Harker's claim in
this letter); Docket No. 76 at 3, ¶ 11 (disputing Ms. Martin-Harker's characterization of
the letter a denial and asserting instead that the letter advised that State Farm "would
not be able to tender limits by the requested date based on the information available,
and as State Farm was awaiting addendum from Dr. Stull to address Dr. Grossnickle's
opinion").  However, the parties do not disagree on the content of the November 21,
2022 letter.  Therefore, the Court will deem the content of the letter as admitted.

Docket No. 66 at 10, ¶ 37. [16]

## II.    LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when

the "movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if,

under the relevant substantive law, it is essential to proper disposition of the claim.

*Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes

over material facts can create a genuine issue for trial and preclude summary judgment.

*Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is

"genuine" if the evidence is such that it might lead a reasonable jury to return a verdict

for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).  A

movant who bears the burden at trial must submit evidence to establish the essential

elements of its claim.  *Harper v. Mancos Sch. Dist. RE-6*, 837 F. Supp. 2d 1211, 1217

(D. Colo. 2011).

Where "the moving party does not bear the ultimate burden of persuasion at trial,

it may satisfy its burden at the summary judgment stage by identifying a lack of

---

[16] Ms. Martin-Harker denies this fact arguing that "this statement of fact is inaccurate, omits critical content and is therefore denied as written" and that the "letter speaks for itself and includes contradictory statements and erroneous information." Docket No. 73 at 4, ¶ 37.  Ms. Martin-Harker does not explain what information is inaccurate, omitted, contradictory, or erroneous and cites no evidence to support her denial.  *See* Practice Standards (Civil cases), Chief Judge Philip A. Brimmer, § III.F.3.b.iv ("Any denial shall be accompanied by a **brief** factual explanation of the reason(s) for the denial and a **specific reference** to material in the record supporting the denial."); Fed. R. Civ. P. 56(c)(1)(A).  The Court therefore deems this fact admitted.

evidence for the nonmovant on an essential element of the nonmovant's claim."
*Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations
omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving
party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of
Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The
nonmoving party may not rest solely on the allegations in the pleadings, but instead
must designate "specific facts showing that there is a genuine issue for trial." *Celotex
Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary
judgment, the nonmovant must establish, at a minimum, an inference of the presence of
each element essential to the case." *Bausman*, 252 F.3d at 1115.

When reviewing a motion for summary judgment, a court must view the evidence
in the light most favorable to the non-moving party. *Id.* Cross-motions for summary
judgment must be viewed separately, and the denial of one does not necessitate the
granting of the other. *United States v. Supreme Court of N.M.*, 839 F.3d 888, 906-07
(10th Cir. 2016) (citations omitted).

## III.    ANALYSIS

Ms. Martin-Harker brings the following claims (1) breach of contract; (2)
unreasonable denial or delay of insurance benefits pursuant to Colo. Rev. Stat. §§ 10-3-
1115 and 10-3-1116; and (3) common law bad faith breach of an insurance contract.
Docket No. 7 at 6–9, ¶¶ 83–97. Ms. Martin-Harker claims that she is "entitled to be
compensated by Defendant State Farm for all damages she has incurred . . . under the
UIM coverage policy." *Id.* at 7, ¶ 87. Ms. Martin-Harker alleges that State Farm "denied
and/or delayed payment of UIM benefits . . . without a reasonable basis for its action."

*Id.*, ¶ 89.  She further alleges that State Farm breached its duties and acted in bad faith by "[f]ailing to conduct a timely and thorough investigation" into Ms. Martin-Harker's claims, "[f]avoring" State Farm's interests over Ms. Martin-Harker's, denying and delaying reasonable compensation, failing to "reasonably explain" its evaluation, and "[i]ncompetently evaluating" Ms. Martin-Harker's claims.  *Id.* at 7–8, ¶ 94.  Ms. Martin-Harker alleges that State Farm's actions were "unreasonable."  *Id.* at 8, ¶ 95.

Ms. Martin-Harker and State Farm move for summary judgment on Ms. Martin-Harker's two bad faith claims.

### 1.  Statutory Bad Faith Claim

#### a.  Ms. Martin-Harker's Motion for Summary Judgment

The Court will first address State Farm's argument that Ms. Martin-Harker must show an entitlement to UIM benefits before she can recover on her statutory claims.  Docket No. 76 at 7–8.  State Farm argues that Ms. Martin-Harker must "prove her damages exceed the $100,000 bodily injury liability limits from the at-fault driver."  *Id.* at 8.  Ms. Martin-Harker replies that it is "not disputed that Plaintiff was insured through State Farm and that her policy included $100,000 in underinsured motorist benefits" and that "Mr. Waln[, the at-fault driver,] was 100% responsible for causing the collision."  Docket No. 83 at 4.  She argues that "the Court can also grant Summary Judgment on Plaintiff's 2nd and 3rd claims and leave the amount of damages or the amounts unreasonably denied to be determined by the jury."  *Id.* at 5.

"Under Colorado law, before an insured individual can recover against her UIM carrier for statutory bad faith, she must first establish she is entitled to UIM benefits."

12

*Keller v. State Farm Mut. Auto. Ins. Co.*, No. 22-cv-00474-CMA-KAS, 2023 WL
6048790, at *8 (D. Colo. Sept. 15, 2023), *report and recommendation adopted*, 2023
WL 7458357 (D. Colo. Oct. 2, 2023) (internal quotation, alterations omitted).To prove a
statutory bad faith claim, a "plaintiff must show (1) <u>benefits were owed under the policy</u>;
and (2) defendant unreasonably delayed or denied payment of plaintiff's claim."
*Mordhorst Cleaning, LLC v. Am. Strategic Ins. Corp.*, No. 23-cv-00017-NYW-MEH,
2024 WL 4932505, at *9 (D. Colo. Dec. 2, 2024) (internal quotation and citation
omitted).  Therefore, "the benefits at issue must have been covered by the insurance
policy, and where no benefits are owed, then payment of those benefits cannot, as a
matter of law, have been unreasonably delayed to the insured or denied by the insurer."
*Keller*, 2023 WL 6048790, at *9 (citing *Giertz v. State Farm Mut. Auto. Ins. Co.*, 2023
WL 3728197, at *3 (10th Cir. May 26, 2023)).

Ms. Martin-Harker and State Farm stipulate to the following facts in the Final
Pretrial Order:  The December 21, 2021 accident was caused by Todd Waln.  Docket
No. 85 at 3, ¶ 1.  At the time of the accident, Mr. Waln was insured for bodily injury
liability with coverage limits of $100,000 per person.  *Id.* at 4, ¶ 2.  Ms. Martin-Harker
was insured under State Farm Policy No. 153 9760-A02-06E, with UIM limits of
$100,000 per person.  *Id.*, ¶ 4.  With State Farm's permission, Ms. Martin-Harker made
a claim against Mr. Waln and settled for his $100,000 bodily injury liability limit payment
she received from the tortfeasor.  *Id.*, ¶ 3.

Therefore, under her policy with State Farm, Ms. Martin-Harker would only be
entitled to UIM benefits from State Farm if her bodily injury claims exceeded the
$100,000 payment she received from the tortfeasor.  It will be up to the jury to decide

whether the injuries covered by her State Farm policy exceeded $100,000.  Ms. Martin-

Harker has not moved for summary judgment on her breach of contract claim.  The

undisputed facts Ms. Martin-Harker uses to support her motion do not demonstrate that

the value of her injuries exceed $100,000 and therefore Ms. Martin-Harker is entitled to

UIM benefits from her State Farm policy.  *See Uhl v. Progressive Direct Ins. Co.,* No.

23-cv-01904-NYW-SBP, 2025 WL 460941, at *3 (D. Colo. Feb. 11, 2025) ("Colorado

courts have required plaintiffs asserting breach of contract claims to prove coverage

and entitlement to benefits when litigating derivative bad faith claims") (emphasis

omitted).  Accordingly, the Court will deny summary judgment for Ms. Martin-Harker on

her statutory bad faith claim.

### b.  State Farm's Motion for Summary Judgment

State Farm argues that it is entitled to summary judgment on Ms. Martin-Harker's

statutory bad faith claim because she cannot show that State Farm denied her claim

without a reasonable basis.  Docket No. 66 at 14.  State Farm states that it denied Ms.

Martin-Harker's claim because it "questioned the mechanisms of injury for a shoulder

injury from a rear-end motor vehicle accident," noted Ms. Martin-Harker did not

experience an immediate onset of symptoms that would be expected of an acute

shoulder injury, and noted the "chronic and degenerative nature" of Ms. Martin-Harker's

shoulder pathology.  *Id*.  State Farm contends that its position was supported by Dr.

Stull, who reviewed all available records and found that Ms. Martin-Harker's shoulder

condition was a product of aging and repetitive use and not acute trauma.  *Id*.

Ms. Martin-Harker responds that State Farm "unreasonably denied coverage with

zero support for its position."  Docket No. 73 at 9.  Ms. Martin-Harker contends that

State Farm acted unreasonably in failing to seek pertinent information from Dr.
Grossnickle before denying Ms. Martin-Harker's claim. *Id.* Ms. Martin-Harker contends
that State Farm "made no effort to learn why Dr. Grossnickle thought the way he did"
after receiving Dr. Grossnickle's opinion that Ms. Martin-Harker's right shoulder
condition was caused by the December 21, 2021 accident. *Id.* at 11. Rather, Ms.
Martin-Harker argues that State Farm "looked for a reason to deny the claim –
regardless of facts" in relying on Dr. Stull's report. *Id.* at 12.

Pursuant to § 10-3-1115, an insurer may not "unreasonably delay or deny
payment of a claim for benefits owed to or on behalf of any first-party claimant." Colo.
Rev. Stat. § 10-3-1115(1)(a). An insurer's conduct is unreasonable "if the insurer
delayed or denied authorizing payment of a covered benefit without a reasonable basis
for that action." Colo. Rev. Stat. § 10-3-1115(2). The determination of whether an
insurer has breached its duties to the insured is one of reasonableness under the
circumstances. *Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 523 (Colo. App.
2008). In other words, the question is whether a reasonable insurer under similar
circumstances would have denied or delayed payment of the claim. *Id.* The
reasonableness of an insurer's conduct must be determined objectively, based on proof
of industry standards. *Schultz v. GEICO Cas. Co.,* 429 P.3d 844, 847 (Colo. 2018).
"These standards may be established through expert opinions or state law." *Peden v.
State Farm Mut. Auto. Ins. Co.*, 841 F.3d 887, 890 (10th Cir. 2016) (applying Colorado
law). Whether an insurer's conduct was reasonable under the circumstances is
ordinarily a question of fact for the jury when conflicting evidence exists. *Zolman v.
Pinnacol Assurance*, 261 P.3d 490, 497 (Colo. App. 2011). However, in appropriate

circumstances, as when there are no genuine disputes of material facts,

reasonableness may be decided as a matter of law.  *COPIC*, 192 P.3d at 524.

As an initial matter, the fact that State Farm relied on Dr. Stull's report in denying

Ms. Martin-Harker's claim does not mean that State Farm acted reasonably as a matter

of law.  *See Masters v. Safeco Ins. Co. of Am.,* No. 20-cv-00631-PAB-NRN, 2021 WL

4326269, at *8 (D. Colo. Sept. 23, 2021).  "Holding that an insurance company cannot

be deemed liable for bad faith conduct so long as it can hang its hat on the opinions of

hired consultants would permit insurers to shield themselves from liability by attributing

their coverage decisions to some expert's opinion.  Such a result would disregard all of

the objective industry standards upon which the reasonableness of an insurer's conduct

is based which would contravene the well-established body of Colorado insurance law."

*Copper Creek Inc. v. State Farm Fire & Cas. Co.*, No. 21-cv-01603-NYW-MEH, 2022

WL 17454493, at *13 (D. Colo. Dec. 6, 2022) (internal citation omitted).

State Farm cites cases where there was no evidence that the insurer, at the time

of denying the insured's claim, had information that would make denial of the claim

unreasonable.  For instance, State Farm cites *Anderson v. Am. Nat'l Prop. & Cas. Co.*,

No. 17-cv-03016-KMT, 2020 WL 406077 (D. Colo. Jan. 23, 2020), where the insurer

"was completely unaware of . . .  criticisms [from the insured's medical provider] of the

IME report, and it was given no opportunity to review [the] letters prior to being accused

of bad faith in its investigation."  2020 WL 406077, at *12.  Accordingly, the court found

that there was "no admissible evidence brought forth as part of the summary judgment

record, upon which a reasonable juror could rely, to find that [the insurer] lacked a

reasonable basis in support of its valuation of the claim."  *Id*.  Similarly, in *Burke v. State*

*Farm Mut. Auto. Co.,* No. 21-cv-02512-CMA-MDB, 2023 WL 4297578, at *4–5 (D. Colo.

June 30, 2023), the insured attempted to dispute the reasonableness of the insurer's

claim investigation by introducing the opinions of her medical providers that were

provided after the insured commenced the lawsuit.  The court characterized the

insured's evidence as a "disingenuous" attempt to "imply that this information bears on

[the insurer's] reasonableness prior to the start of this litigation."  *Id*. at *5; *see also*

*Albrandt v. State Farm Mut. Auto. Ins. Co.,* No. 20-cv-01926-RM-NYW, 2021 WL

5140283, at *1–2 (D. Colo. Nov. 4, 2021) (granting summary judgment to the insurer

where the insured only disputed the reasonableness of the insurer's conduct based

upon the insurer's failure to accept most of the insured's medical treatment bills and

taking an extended period of time to issue payment to the insured).

By contrast, it is undisputed that State Farm was aware of Dr. Grossnickle's

opinion that Ms. Martin-Harker's right shoulder injury was related to the December 21,

2021 accident before issuing its denial on December 6, 2022.  Docket No. 66 at 8, 9–10

¶¶ 28–29, 35–36.  Dr. Grossnickle's opinions failed to change Dr. Stull's conclusion that

the accident did not cause Ms. Martin-Harker's right shoulder injury.  *Id*. at 7, 9–10

¶¶ 26, 35.  Whether it was reasonable for State Farm to credit Dr. Stull's opinion over

that of Dr. Grossnickle is a task reserved for the jury.  *See Leeper*, 2016 WL 1089701,

at *8; *Masters*, 2021 WL 4326269, at *7.

There is a genuine issue of material fact as to whether State Farm acted

unreasonably in delaying or denying Ms. Martin-Harker's claim regarding her shoulder

injury.  Accordingly, the Court will deny summary judgment for State Farm on Ms.

Martin-Harker's statutory bad faith claim.

17

### 2. Common Law Bad Faith

### a. State Farm's Motion for Summary Judgment

To succeed on a Colorado common law bad faith claim, "a plaintiff must show that the insurer acted both unreasonably and with knowledge of or reckless disregard of its unreasonableness." *Hyden v. Farmers Ins. Exch.*, 20 P.3d 1222, 1226 (Colo. App. 2000). If a claim is "fairly debatable," that weighs against a finding that the insurer satisfies the "knowledge or recklessness prong of common law bad faith." *Fisher v. State Farm Mut. Auto. Ins. Co.,* 419 P.3d 985, 990 (Colo. App. 2015) (citation omitted). However, "even if a plaintiff's claim for UIM benefits were fairly debatable in the common law context, that would not alone establish that the defendant's actions were reasonable as a matter of law." *Id.* (citation and alterations omitted). Therefore, if State Farm shows that there is no genuine dispute that it did not know, or recklessly disregard, that its investigation and denial of Ms. Martin-Harker's claim were unreasonable, it is entitled to summary judgment on Ms. Martin-Harker's common law bad faith claim. *See Copper Creek Inc.*, 2022 WL 17454493, at *12.

The "knowledge of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is a reckless disregard of a lack of a reasonable basis for denial or a reckless indifference to facts or to proofs submitted by the insured." *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1275 (Colo. 1985) (quoting *Anderson v. Cont'l Ins. Co.*, 271 N.W.2d 368, 377 (Wis. 1978)). An insurance company recklessly disregards the unreasonableness of its coverage position when it acts with knowledge that its position lacks a reasonable basis or when it is deliberately indifferent to information concerning the claim. Colo. Jury Instr., Civil 25:7. Therefore, "[i]f an insurer

does not know that its denial of or delay in processing a claim filed by its insured is unreasonable, and does not act with reckless disregard of a valid claim, the insurer's conduct would be based upon a permissible, albeit mistaken, belief that the claim is not compensable."  *Savio*, 706 P.2d at 1275.

State Farm requested five years of Ms. Martin-Harker's prior medical records and a list of medical providers that treated Ms. Martin-Harker before and after the accident. Docket No. 66 at 5, ¶ 17.  Dr. Stull reviewed Ms. Martin-Harker's medical records, considered Dr. Grossnickle's opinion, and decided that it did not impact his analysis.  *Id*. at 7, 9–10, ¶¶ 26, 35.  The fact that State Farm based its denial of Ms. Martin-Harker's claim on Dr. Stull's opinion, and not Dr. Grossnickle's opinion, does not mean that State Farm "recklessly disregard[ed] the unreasonableness" of its coverage position.  Colo. Jury Instr., Civil 25:7; *see Masters,* 2021 WL 4326269, at *11 ("Although defendant based its coverage determination on the [independent medical examination] IME report . . . defendant was aware of the information in plaintiff's medical records . . . and plaintiff has not created a genuine dispute of material fact that defendant recklessly disregarded this information, even though defendant may have discounted plaintiff's providers' records in favor of the IME").

Ms. Martin-Harker fails to raise a genuine dispute of material fact that State Farm acted with knowledge that its conduct was unreasonable or that it was recklessly indifferent to information concerning Ms. Martin-Harker's claim.  *See* Docket No. 73 at 9–13.  Ms. Martin-Harker makes unsubstantiated allegations such as "[w]hat Dr. Stull did not say did not matter to Ms. Kerns and it did not matter to State Farm.  Ms. Kerns was looked [sic] for any reason to deny the claim – regardless of the facts."  *Id*. at 12.

19

Ms. Martin-Harker argues that she "was unable to get State Farm to look at the

evidence of Plaintiff's injury."  *Id.* at 13.

The undisputed facts demonstrate that State Farm and Dr. Stull did consider all

the evidence provided by Ms. Martin-Harker and did so promptly.  On November 15,

2022, Ms. Martin-Harker sent a letter to State Farm that attached a form from Dr.

Grossnickle that indicated the December 21, 2021 accident "caused or contributed to an

injury to Plaintiff's right shoulder and the need for surgery."  Docket No. 64 at 3, ¶ 9;

Docket No. 66 at 8, ¶ 28.  Ms. Martin-Harker further provided medical records from her

visit with Dr. Grossnickle.  Docket No. 64 at 3, ¶ 10; Docket No. 66 at 8, ¶ 29.  On

November 21, 2022, State Farm sent a response letter, asking whether Dr. Grossnickle

was "aware of the right shoulder complaints prior to the accident" and "aware that Ms.

Harker did not initially report the right shoulder in her 1st UC Health visit of December

21, 2021."  Docket No. 66-14.  State Farm informed Ms. Martin-Harker that it sent "the

new information to get an Addendum Report and to see if Dr. Stull's opinion changes."

*Id.*  On November 22, 2022, Ms. Martin-Harker sent a letter to State Farm that asked

why State Farm did not contact Dr. Grossnickle directly.  Docket No. 66 at 9, ¶ 31;

Docket No. 64 at 3, ¶ 12.  On November 30, 2022, State Farm responded and stated

that it had provided Dr. Grossnickle's "causation opinions" to Dr. Stull.  Docket No. 66 at

9, ¶ 32.  On December 1, 2022, Ms. Martin-Harker wrote to State Farm again and noted

that it was unclear why State Farm would not contact Dr. Grossnickle directly.  *Id.*, ¶ 33.

She attached a narrative from Dr. Grossnickle, in which he stated "I feel unlikely that

[Ms. Martin-Harker] had a [sic] evolving SLAP lesion in November 2020 that took a year

and a half to become symptomatic.  I feel it is much more likely that the SLAP lesion

was a result of her motor vehicle accident."  Docket No. 64 at 3, ¶ 14; Docket No. 66 at 9, ¶ 34.  On December 6, 2022, after receiving Dr. Stull's addendum on December 5, 2022, State Farm sent a letter to Ms. Martin-Harker stating that Dr. Stull's opinions remained unchanged and that it would reject Ms. Martin-Harker's demand for UIM benefits.  Docket No. 64 at 3, ¶ 15; Docket No. 66 at 10, ¶ 36.  No reasonable jury, on these facts, could conclude that State Farm knew that it was unreasonable to deny Ms. Martin-Harker's claim for her right shoulder injury or that State Farm was recklessly indifferent to information concerning Ms. Martin-Harker's claim.

Ms. Martin-Harker fails to raise a genuine dispute as to whether State Farm knew that it was unreasonable to deny or claim or was recklessly indifferent to information regarding her claim.  *See* Colo. Jury Instr., Civil 25:7.  Therefore, Ms. Martin-Harker has failed to prove an essential element of her claim for common law bad faith.  The Court will grant summary judgment for State Farm claim three, Ms. Martin-Harker's claim for common law bad faith.

### b.  Ms. Martin-Harker's Motion for Summary Judgment

For the reasons discussed previously, the Court finds that no reasonable jury could find for Ms. Martin-Harker on her claim for common law bad faith and will grant State Farm's motion for summary judgment on that claim.  Therefore, Ms. Martin-Harker is not entitled to summary judgment on her claim for common law bad faith.  *See Chafin v. Stasi*, No. 13-cv-02661-WYD-MEH, 2015 WL 1525542, at *13, *15 (D. Colo. Mar. 31, 2015) (granting defendant's motion for summary judgment on two of plaintiff's claims and denying plaintiff's motion for summary judgment on those two claims for the same reasons).

IV.    **CONCLUSION**

Therefore, it is

**ORDERED** that Plaintiff Elizabeth Martin-Harker's Motion for Partial Summary

Judgment [Docket No. 64] is **DENIED**.  It is further

**ORDERED** that Defendant's Motion for Summary Judgment on Plaintiff's Second

and Third Claims for Relief [Docket No. 66] is **GRANTED in part and DENIED in part**.

It is further

**ORDERED** that Ms. Martin-Harker's claim for common law bad faith, claim three,

is **DISMISSED with prejudice**.

DATED March 26, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge