IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 23-cv-00629-PAB-STV

ELIZABETH MARTIN-HARKER,

     Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

     Defendant.

---

## ORDER

---

     This matter comes before the Court on Defendant's Corrected Motion to Exclude Opinions of Jeremy Sitcoff [Docket No. 69]. On July 11, 2024, plaintiff Elizabeth Martin-Harker filed a response. Docket No. 75. On July 25, 2024, defendant State Farm Mutual Automobile Insurance Company ("State Farm") filed a reply. Docket No. 82. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## I.  BACKGROUND[1]

     Plaintiff Elizabeth Martin-Harker was injured in a car accident on December 21, 2021. Docket No. 85 at 1. Ms. Martin-Harker filed suit against her insurance company, defendant State Farm, in state court, which State Farm removed to federal court on March 10, 2023. Docket No. 1 at 1. Ms. Martin-Harker seeks insurance proceeds that she alleges that she is entitled to under her policy's underinsured motorist ("UIM") coverage. Docket No. 7 at 6–8. She brings claims for breach of contract, for statutory

---

[1] A full recitation of the facts is included in the background of the Court's order on the parties' cross-motions for summary judgment. Docket No. 88 at 1-10.

bad faith delay or denial of her claim, and for common law bad faith delay or denial of her claim.  *Id*.

On June 10, 2024, Ms. Martin-Harker and State Farm filed cross-motions for summary judgment on Ms. Martin-Harker's bad faith claims.  Docket Nos. 64, 66.  On March 26, 2025, the Court issued an order on parties' cross-motions for summary judgment, granting in part and denying in part State Farm's motion for summary judgment and denying Ms. Martin-Harker's motion for summary.  Docket No. 88.  The Court dismissed Ms. Martin-Harker's third claim for common law bad faith.  *Id.* at 22.  On June 12, 2024, State Farm filed the instant motion to exclude nine opinions from the report of Jeremy Sitcoff, Docket No. 69-1, Ms. Martin-Harker's expert on insurance industry standards.  Docket No. 69.

## II.    LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590–91 (1993).  If challenged by a party opposing the testimony of an expert witness, "[Rule] 702 imposes upon the trial judge an important 'gate-keeping' function with regard to the admissibility of expert opinions."  *Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297, 1307 (10th Cir. 2015) (citation omitted).  However, "[t]he proponent of expert testimony bears the burden of showing that its proffered expert's testimony is admissible."  *United*

*States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).  "[T]he proponent has the

burden of establishing that the pertinent admissibility requirements are met by a

preponderance of the evidence."  *Id.* (quoting Fed. R. Evid. 702 advisory committee's

note (2000)).

To determine whether an expert opinion is admissible, the court must perform "a

two-step analysis."  *Roe v. FCA US LLC*, 42 F.4th 1175, 1180 (10th Cir. 2022); *see also*

*103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006).  First, the

court must determine whether the expert is qualified by "knowledge, skill, experience,

training, or education" to render an opinion.  *Roe*, 42 F.4th at 1180 (quoting Fed. R.

Evid. 702).

Second, if the expert is sufficiently qualified, the proffered opinions must be

assessed for reliability.  *Id.* at 1180–81.  To demonstrate the reliability of an opinion that

is based solely on an expert's experience, the expert "must explain how that experience

leads to the conclusion reached, why that experience is a sufficient basis for the

opinion, and how that experience is reliably applied to the facts."  *United States v.*

*Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) (quoting Fed. R. Evid. 702,

advisory committee notes).  Establishing reliability does not require showing that the

expert's testimony is indisputably correct.  *United States v. Pehrson*, 65 F.4th 526, 540

(10th Cir. 2023); *see also Goebel v. Denver & Rio Grande W. R.R. Co.,* 346 F.3d 987,

991 (10th Cir. 2003) (discussing how the opinion is tested against the standard of

reliability, not correctness).  However, "nothing in either *Daubert* or the Federal Rules of

Evidence requires a district court to admit opinion evidence that is connected to existing

data only by the *ipse dixit* of the expert."  *Roe*, 42 F.4th at 1181.  "[T]he trial judge must

3

have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

## III.    ANALYSIS

In some cases, such as insurance bad faith cases, expert witnesses are permitted to testify about relevant legal standards.  "[A]n expert's testimony is not *per se* inadmissible simply because it requires discussion of the law."  *Amica Life Ins. Co. v. Wetz*, No. 15-cv-01161-WJM-CBS, 2017 WL 897839, at *3 (D. Colo. Mar. 7, 2020).  "[A] witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms."  *Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988).  Such testimony "is proper under Rule 702 if the expert does not attempt to define the legal parameters within which the jury must exercise its fact-finding function.  However, when the purpose of testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based, the testimony cannot be allowed."  *Id.* at 809-10.  Testimony that "articulates the ultimate principles of law governing the deliberations of the jury" is inadmissible.  *Id.* at 808.  While an expert may refer to the law in expressing his or her opinion, the expert "may not state legal conclusions drawn by applying the law to facts."  *A.E. ex rel. Evans v. Indep. Sch. Dist. No. 25*, 936 F.2d 472, 476 (10th Cir. 1991) (citations omitted).

An expert may testify as to insurance industry standards codified in Colorado statute and ones that are "generally accepted" within the Colorado insurance industry. *Dale v. Country Preferred Ins. Co.,* No. 19-cv-01991-PAB-SKC, 2021 WL 1172574, at *2 (D. Colo. Mar. 29, 2021).  Industry standards are those that are "customary" and

provide an "objective basis" for establishing "standards of conduct in the insurance industry." *Brewer v. Am. & Foreign Ins. Co.*, 837 P.2d 236, 238 (Colo. App. 1992); *see also Turner v. State Farm Mut. Auto. Ins. Co.*, No. 13-cv-01843-MSK-NYW, 2015 WL 3526995, at *4 (D. Colo. June 4, 2015) ("'Industry standards' are those practices or procedures that, although not compelled by law, are generally and voluntarily observed by all or most participants in a certain industry for reasons such as efficiency, convenience, or uniformity.")

If an expert testifies to an industry standard that is not codified, the expert must show that the industry standard is "generally accepted." *Dale,* 2021 WL 1172574, at *2. Where an expert provides no "source, context or other information about how [industry standards] were formulated or why they are considered industry standards," an expert may not rely on such industry standards. *Turner v. State Farm Mut. Auto. Ins. Co.*, No. 13-cv-01843-MSK-BNB, 2015 WL 1297844, at *6 (D. Colo. Mar. 19, 2015).

An expert is not permitted to "state legal conclusions drawn by applying the law to facts," *A.E. ex rel. Evans*, 936 F.2d at 476, because "such ultimate conclusions would not be helpful to the jury and would improperly intrude on its fact-finding function." *O'Sullivan*, 233 F. Supp. 3d 917, 929 (D. Colo. 2017) (excluding opinions that an insurance company's conduct violated the law). Therefore, an expert may not opine on whether a party met its duties under applicable caselaw or violated various statutes. An expert may, however, testify whether, in his or her opinion, a party's conduct conformed with specific insurance industry standards, including ones identified in statutes, and may compare those standards to specific factual instances involving defendant's actions. *See Dale*, 2021 WL 1172574, at *3; *see also O'Sullivan*, 233 F. Supp. 3d at 928 (ruling

that expert could offer opinions whether defendant's conduct "differed, in factual terms"
from industry standards, but could not opine about whether defendant's conduct "was
unlawful or 'egregious'"); *Houston Speciality Ins. Co. v. Vaughn*, 2017 WL 11415011, at
*3 (M.D. Fla. Apr. 13, 2017) (permitting an insurance expert to (1) "explain[] what she
knows of insurance industry standards, (2) "explain[] the facts and evidence she
reviewed in the case," and (3) "opin[e] on the ways she believes [the insurer's] conduct
fell short of" those standards).  Moreover, an expert may not offer a cumulative
summary of a party's actions to opine that a party's conduct either failed to meet all of
the relevant industry standards, and therefore its conduct was unreasonable according
to those standards, or was unreasonable as a matter of law.  *See O'Sullivan*, 233 F.
Supp. 3d at 929.  The expert's opinions must be "sufficiently grounded by reference to
specific factual observations" and then linked to "industry standards."  *Conrad v.
Owners Ins. Co.,* No. 20-cv-02173-KMT, 2021 WL 5280188, at *3 (D. Colo. Nov. 12,
2021).

State Farm moves to strike nine opinions from the report of Jeremy Sitcoff.
Docket No. 69-1.  Ms. Martin-Harker has endorsed Mr. Sitcoff as an expert on insurance
industry standards.  Docket No. 69-1 at 2.  State Farm does not challenge his
qualifications.  *See generally* Docket No. 69.

### 1.  Opinion 1

> A reasonable investigation would have sought out the opinion of a third doctor,
> which did not happen.  A reasonable investigation would have had the adjuster
> contact Dr. Grossnickle to discuss his opinion.  That did not happen.  A
> reasonable investigation would have had Dr. Stull contact Dr. Grossnickle to
> discuss their conflicting opinion.  That did not happen.

Docket No. 69 at 4 (citing Docket No. 69-1 at 19).  State Farm argues that Mr. Sitcoff's
opinion constitutes an improper application of law to facts and that Mr. Sitcoff does not

provide an "actual accepted industry standard." *Id*. at 5. State Farm further argues that Mr. Sitcoff's opinion on what constitutes the industry standard is in contravention of Colorado law. *Id.* at 4.

Mr. Sitcoff identifies the industry standard as the following: "Consistent with the foregoing principles, the industry standard in Colorado is to conduct a reasonable investigation." Docket No. 69-1 at 18. An expert on insurance industry standards "may testify whether, in his opinion, defendant's conduct conformed with specific insurance industry standards," including those that are codified under the Unfair Claim Settlement Practices Act (the "UCSPA"), Colo. Rev. Stat. § 10-3-1104. *George v. Metro. Prop. & Cas. Ins. Co*., No. 18-cv-01663-PAB-SKC, 2020 WL 70424, at *9 (D. Colo. Jan. 2, 2020). Under Colo. Rev. Stat. § 10-3-1104(1)(h)(IV) of the UCSPA, it is an unfair claim settlement practice to "[r]efus[e] to pay claims without conducting a reasonable investigation based upon all available information." Colo. Rev. Stat. § 10-3-1104(1)(h)(IV). Accordingly, Mr. Sitcoff has identified a proper industry standard.

The remainder of Mr. Sitcoff's opinion constitutes a proper opinion as to whether State Farm's conduct conformed with the identified industry standard, namely, that an insurer conduct a reasonable investigation based upon all available information before refusing to pay a claim. *See Dale*, 2021 WL 1172574, at *3. Specifically, Mr. Sitcoff states that State Farm's failure to seek out the opinion of a third doctor, given the conflicting opinions of Dr. Grossnickle and Dr. Stull, meant that State Farm failed to conduct a reasonable investigation. Docket No. 69-1 at 19. Mr. Sitcoff further opines that the claims adjustor's failure to contact Dr. Grossnickle to discuss his opinion meant that State Farm failed to conduct a reasonable investigation. *Id.* Finally, Mr. Sitcoff

states that State Farm – in not having Dr. Stull contact Dr. Grossnickle to discuss their

conflicting opinions – failed to conduct a reasonable investigation.  *Id.*

Contrary to State Farm's assertion, Mr. Sitcoff is not opining that it is industry

standard for an insurer to seek out the opinion of a third doctor, to require its claims

adjustor to contact treating providers, and to require its consulting expert to contact the

insured's treating providers.  Docket No. 69 at 4.  Rather, Mr. Sitcoff applies the facts of

this case to the industry standard, opining that State Farm's conduct did not conform to

industry standards concerning reasonable investigations because State Farm failed to

take the steps that Mr. Sitcoff identified.  *See Olsen v. Owners Ins. Co.*, No. 18-cv-

01665-RM-NYW, 2022 WL 1663121, at *6 (D. Colo. May 25, 2022) (holding that an

insurance standards expert could "explain how claims are generally handled in the

insurance industry, including by discussing the standards for timely investigations,

reservations of rights, and coverage decisions, and can explain the facts that he

believes demonstrate that [the insurer] departed from those standards or fell short of

them").

Accordingly, the Court finds that this opinion does not violate Rule 702 and will

not exclude Opinion One.

### 2.  Opinion 2

It is my opinion that in violation of industry standard, State Farm did not attempt
in good faith to effectuate a prompt, fair, and equitable settlement of Ms. Martin-
Harker's UIM claim in which liability has become reasonably clear . . . .  In the
UIM claim, your office [Ms. Martin-Harker's counsel] presented ample support for
her medical treatment, including medical documents and reports from her
treating physicians indicating that the cause of her injuries, including the
necessary surgical interventions, was the crash caused by Mr. Waln.  State
Farm's investigation was one sided and completely ignored all of the information
that your office had provided in support of Ms. Martin-Harker's UIM claim.

Docket No. 69 at 5 (citing Docket No. 69-1 at 20). State Farm argues that Mr. Sitcoff offers an improper legal conclusion as to whether State Farm violated Colo. Rev. Stat. § 10-3-1104(1)(h)(VI), which states that is an unfair settlement practice to "[n]ot attempt[] in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear." *Id*. State Farm claims that Mr. Sitcoff's opinion is also "an impermissible medical causation assessment" because Mr. Sitcoff's opinion is "necessarily based on a rejection of the medical opinions of Dr. Stull." *Id*. at 5–6. State Farm further argues that, while Mr. Sitcoff opines that it is industry standard that an "insurer may not dispute medical causation in reliance on expert opinion," that opinion is "contrary to Colorado law." *Id*. at 6.

Mr. Sitcoff identifies as an industry standard that an insurer has a duty "in good faith to effectuate a prompt, fair, and equitable settlement" in which liability has become reasonably clear. Docket No. 69-1 at 20. This industry standard is codified at Colo. Rev. Stat. § 10-3-1104(1)(h)(VI), which states that it is an unfair settlement practice to "[n]ot attempt[] in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear." Colo. Rev. Stat. § 10-3-1104(1)(h)(VI).

In applying this standard to the facts, Mr. Sitcoff notes that Ms. Martin-Harker had provided "medical documents and reports from her treating physicians indicating that the cause of her injuries, including the necessary surgical interventions, was the crash caused by Mr. Waln [the tortfeasor]" to State Farm. Docket No. 69-1 at 20. However, Mr. Sitcoff then includes several opinions for which Ms. Martin-Harker has not shown that Mr. Sitcoff has the qualifications to offer. First, Mr. Sitcoff says that, in regard to

Ms. Martin-Harker's UIM claim, "liability has become reasonably clear." *Id.* While Mr.

Sitcoff can note that Mr. Waln's liability for the accident was undisputed, it is misleading

to cite that fact in drawing the conclusion that the cited standard was violated since

liability was not the basis of State Farm's denial, rather causation was. Mr. Sitcoff then

opines that "State Farm's investigation was one sided and completely ignored all of the

information that [Ms. Martin-Harker's counsel's] office had provided in support of Ms.

Martin-Harker's UIM claim." *Id.* Mr. Sitcoff does not explain the basis for this opinion.

Earlier in his report, Mr. Sitcoff himself acknowledges that "State Farm had a situation

where it had clearly conflicting opinions." *Id.* at 19. There is no identified basis for Mr.

Sitcoff to claim that State Farm "completely ignored all of the information" that Ms.

Martin-Harker submitted, unless he is commenting on State Farm's ultimate medical

conclusion, which Mr. Sitcoff has no qualifications to make. Thus, that opinion is not

"sufficiently grounded by reference to specific factual observations" and "then linked by

Mr. [Sitcoff] to industry standards." *Conrad*, 2021 WL 5280188, at *3.

Accordingly, while Mr. Sitcoff can identify the standard contained in Colo. Rev.

Stat. § 10-3-1104(1)(h)(VI), the Court will exclude the rest of Opinion 2.

### 3. Opinion 3

> It is my opinion that in violation of industry standard, State Farm has compelled
> Ms. Martin-Harker to file this lawsuit to recover amounts due under the State
> Farm policy by offering substantially less than the amounts ultimately recovered
> in actions brought by such insureds. Insurance companies have an obligation to
> their insureds to fairly and promptly investigate and then appropriately negotiate,
> settle, or defend covered claims for damages. As discussed above, State Farm
> did not fairly investigate Ms. Martin-Harker's claim for UIM benefits. Nor did it
> appropriately negotiate, settle, or defend her claim. Instead, State Farm offered
> no UIM benefits to her. In refusing to reasonably and fairly investigate Ms.
> Martin-Harker's claim, State Farm left its insured with little choice but to file a
> lawsuit to obtain the benefits under her policy for which she had paid.

Docket No. 69 at 7 (citing Docket No. 69-1 at 20).  State Farm argues that this opinion is

inadmissible because Ms. Martin-Harker "has not ultimately recovered more than State

Farm offered."  *Id.*

Mr. Sitcoff relies on the following UCSPA standard: it is an unfair settlement

practice for an insurer to "compel[] insureds to institute litigation to recover amounts due

under an insurance policy by offering substantially less than the amounts ultimately

recovered in actions brought by such insureds."  Colo. Rev. Stat. § 10-3-1104(1)(h)(VII).

Mr. Sitcoff does not explain how the UCSPA standard at Colo. Rev. Stat. § 10-3-

1104(1)(h)(VII) is applicable to this case.  Ms. Martin-Harker has not "ultimately

recovered" any policy benefits in an action that she has brought.  *See Salopek v. Zurich

Am. Life Ins. Co.,* 428 F. Supp. 3d 609, 626 (D.N.M. 2019) (finding that a provision in

the New Mexico Unfair Claims Practices Act, N.M. Stat. § 59A-16-20(G), with identical

language to Colo. Rev. Stat. § 10-3-1104(1)(h)(VII), required "Plaintiff to show the

following elements: 1) the insured has a reasonable claim under the policy; 2) the

insurer denies the insured's reasonable claim; 3) the insured recovers an amount like

the insured's initial reasonable claim"); *Stephens v. GEICO Indem. Co.*, 2005 WL

8163453, at *18 (D.N.M. Dec. 22, 2005) (finding that plaintiffs could not bring a cause of

action under the same New Mexico statute where there was no "judgment or settlement

agreement" requiring the insurer to pay plaintiffs for their claim).  Moreover, even if the

Court were to interpret the phrase "ultimately recovered in actions brought by such

insureds" more broadly to include evidence of recoveries in analogous State Farm

cases, *see Hartford Roman Cath. Diocesan, Corp. v. Interstate Fire & Cas. Co.,* 199 F.

Supp. 3d 559, 602-03 (D. Conn. 2016) (noting that § 38a-816(6)(G) of the Connecticut

Unfair Insurance Practices Act, with the same language as Colo. Rev. Stat. § 10-3-1104(1)(h)(VII), requires plaintiff to show that defendant engaged in unfair practices "with such frequency as to indicate a general business practice") (citations omitted), Mr. Sitcoff has not supported his opinion with evidence of recoveries by similarly situated insureds in other State Farm cases. *See Hemphill v. Liberty Mut. Ins. Co.,* 2013 WL 12123306, at *13 & n.20 (D.N.M. Mar. 27, 2013) (finding that plaintiff's expert provided "nothing more than his opinion" that the insurer violated § 59A-16-20(G) of the New Mexico Unfair Claims Practices Act because the expert did not "support his conclusion with any evidence, much less quantitative or qualitative data" and did not "cite 'actions brought by [other insureds who] have made claims for amounts reasonably similar to amounts ultimately recovered'" as required by the statute, such that the insurer was entitled to summary judgment on plaintiff's claim) (quoting N.M. Stat. § 59A-16-20(G)). Thus, this standard cannot be used to determine whether State Farm acted in bad faith.

Accordingly, the Court will exclude Opinion 3 in its entirety.

### 4. Opinion 4

It is my opinion that in violation of industry standard, State Farm attempted to settle Ms. Martin-Harker's UIM claim for less than the amount to which a reasonable person would have believed he or she was entitled by reference to written or printed advertising material accompanying or made part of an application. The essence of the foregoing standard is that an insurance company should not make lowball offers that contravene the marketing materials and the representations made by an insurance company. Part of the promise made by an insurance company such as State Farm is that it will thoroughly investigate a claim and pay the benefits owed unless the insurance company can provide a specific explanation, usually supported by adequate medical evidence, that would justify something less than a full payment. Contrary to these principles, State Farm made an arbitrary and capricious decision to not offer any UIM benefits despite all of the information provided by your office.

Docket No. 69 at 8. State Farm argues that Mr. Sitcoff's opinion would mislead the jury because Mr. Sitcoff's reference to Colo. Rev. Stat. § 10-3-1104(1)(h)(VIII) is not applicable to the facts of this case. *Id.* State Farm maintains that "there is no allegation or evidence of misleading advertising practices or divergence from the UIM coverage." *Id*.

Mr. Sitcoff relies on the following UCSPA standard: it is an unfair settlement practice for an insurer to "attempt[] to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application." Colo. Rev. Stat. § 10-3-1104(1)(h)(VIII). Mr. Sitcoff states that the "essence" of Colo. Rev. Stat. § 10-3-1104(1)(h)(VIII) is that "an insurance company should not make lowball offers that contravene the marketing materials and the representations made by an insurance company." Docket No. 69-1 at 20.

The Court finds that Opinion 4 is unsupported. Mr. Sitcoff does not cite any advertising materials that Ms. Martin-Harker was exposed to that would lead a reasonable person to believe that she was entitled to a particular claim amount. *Cf. Saleh v. Am. Nat'l Prop. & Cas. Co.*, 2010 WL 11575639, at *5 (D. Nev. Jan. 8, 2010) (holding that the insurer could not be held liable under a Nevada state law provision identical to § 10-3-1104(1)(h)(VIII) because plaintiff "presented no evidence of advertising material, printed or otherwise"); *Drye v. Glatfelter Claims Mgmt., Inc.*, 2024 WL 1330117, at *8 (D. Nev. Mar. 27, 2024) ("Plaintiffs fail to state a claim under (1)(g) [Nevada state law provision identical to § 10-3-1104(1)(h)(VIII)] because they . . . fail to provide any basic supporting facts such as the identification of any written or printed

advertising material."); *McNichols v. GEICO Gen. Ins. Co.*, 2021 WL 3079783, at *6 (D.

Conn. July 21, 2021) (finding that plaintiff failed to state a claim under Connecticut state

law provision that is identical to § 10-3-1104(1)(h)(VIII) in part because plaintiff did not

allege that there "was any advertising material that *accompanied or was made part of*

his application").

By failing to identify advertising material that Ms. Martin-Harker reviewed or was

exposed to, Mr. Sitcoff cannot support his opinion that State Farm contravened

reasonable expectations in its advertising material when it did not offer UIM benefits to

Ms. Martin-Harker.  Accordingly, the Court will exclude Opinion 4 in its entirety.

### 5.  Opinion 5

> It is my opinion that in violation of industry standard, State Farm repeatedly
> disregarded or otherwise failed to act upon medical information submitted by Ms.
> Martin-Harker's attorneys.  State Farm had an affirmative duty to promptly and
> thoroughly investigate Ms. Martin-Harker's claim.  Even though State Farm
> undertook a utilization review, it failed to fairly and thoroughly consider the
> information that your office [Ms. Martin-Harker's counsel] submitted from Dr.
> Grossnickle and it never spoke with either Dr. Grossnickle or with its insured. The
> standard in the insurance industry is to proactively obtain information both from
> the insured (or his or her attorney), as well as from his medical providers directly.
> The reason for obtaining that information directly from the medical providers is to
> ensure that the insurance company is getting a complete and accurate picture of
> the insured's medical treatment, untainted by an insured's counsel's selective
> presentation of evidence.  The same is true with respect to other information
> such as employment status and income, pre-existing conditions, and other claims
> the insured may have made in the past.

Docket No. 69 at 9 (citing Docket No. 69-1 at 20-21).  State Farm argues that this

opinion should be excluded for the same reasons it seeks to exclude Opinion One.  *Id.*

State Farm claims that Mr. Sitcoff's opinion that "industry standard requires an insurer

. . . to contact an insured's treating provider or an insured to resolve a medical

causation dispute" contravenes Colorado caselaw.  *Id.*

14

The first insurance industry standard Mr. Sitcoff identifies is that "State Farm had an affirmative duty to promptly and thoroughly investigate Ms. Martin-Harker's claim." Docket No. 69-1 at 20. The UCSPA does not explicitly impose an obligation for insurers to "promptly and thoroughly investigate" an insured's claims. Rather, the UCSPA imposes an obligation to "affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed," to "adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies," and "conduct[] a reasonable investigation based upon all available information." Colo. Rev. Stat. § 10-3-1104(1)(h)(III), (IV), (V). Mr. Sitcoff, in applying the facts to this standard, opines that State Farm "failed to fairly and thoroughly consider information" from Dr. Grossnickle. Docket No. 69-1 at 20. This standard and that opinion are properly supported by Mr. Sitcoff's report.

The second standard Mr. Sitcoff relies on is that an insurer should "proactively obtain information from both the insured . . . , as well as from his medical providers directly." *Id.* at 21. Mr. Sitcoff explains that the reason for this standard is "to ensure that the insurance company is getting a complete and accurate picture of the insured's medical treatment, untainted by an insured's counsel's selective presentation of evidence." *Id*. He also says that the "same is true with respect to other information such as employment status and income, pre-existing conditions, and other claims the insured may have made in the past." *Id.* Mr. Sitcoff, however, offers no support for there being a "proactive duty" to directly contact the insured and the insured's medical provider in situations, like here, where the insured is represented by counsel and the insurer has already obtained the medical documentation, or a large portion of it, from

15

the insured.  Mr. Sitcoff does not cite any case law or other support for the proposition

that an insurer, rather than being able to rely on the claimant's attorney, is required to

talk to the insured and certain medical providers directly to ensure that the insurer is

getting a "complete and accurate picture."  *Id.*  Similarly, he does not explain why this

purported industry standard would apply "with respect to other information such as

employment status and income, pre-existing conditions, and other claims the insured

may have made in the past."  *Id*.

Other states recognize that there is no such duty for an insurer to contact the

insured's medical provider or otherwise contact and obtain information from the insured

directly where the insurer believes it already has the necessary information.  *See, e.g*.,

*Hanson v. State Farm Mut. Auto. Ins. Co.*, 261 F. Supp. 3d 1110, 1117 (W.D. Wash.

2017) (finding that an insurer did not act in bad faith when it failed to contact the

insured's medical provider because the insurer "believed it did not need more

information," "communicated its interest in receiving any new information," and was

"already in possession" of the insured's medical provider's report that the insurer

considered in evaluating the insured's claim, and noting that "[i]nsurance companies

may justifiably rely on Plaintiff's counsel to apprise them of any changed medical

circumstances" and rejecting the insured's argument that "in order to have conducted a

reasonable investigation, Defendant must have considered every possible medical

opinion") (applying Washington law); *Jackson v. Allstate Ins. Co.*, 780 F. Supp. 2d 781,

792 (S.D. Ind. 2011) ("The insurer has no duty to seek further consultation under the

Indiana statute or under common law, and thus its failure to do so does not constitute

negligence, nor is it evidence of bad faith."); *State Farm Mut. Auto. Ins. Co. v. Misra*,

2024 WL 289032, at *3 (W.D. Tex. Jan. 25, 2024) (finding that insurers do not have a

"pre-suit duty to contact medical providers to raise issues of medical necessity")

(applying Texas law).

Mr. Sitcoff does not provide the "source, context or other information" regarding

how the second industry standard he identifies was formulated or why it is considered

an industry standard.[2]  *Turner*, 2015 WL 1297844, at *6.  Accordingly, the Court will

exclude Opinion 5, except for that portion in which Mr. Sitcoff states that "State Farm

repeatedly disregarded or otherwise failed to act upon medical information submitted by

Ms. Martin-Harker's attorneys," identifies, pursuant to industry standard, that an insurer

has an "affirmative duty to promptly and thoroughly investigate Ms. Martin-Harker's

claims," and opines that State Farm "failed to fairly and thoroughly consider the

information" submitted from Dr. Grossnickle.  Docket No. 69-1 at 20-21.

### 6.  Opinion 6

> It is my opinion that in violation of industry standard, State Farm failed to
> promptly provide Ms. Martin-Harker with a reasonable explanation of the basis in
> the insurance policy in relation to the facts or applicable law for denial of a claim
> or for the offer of a compromise settlement.  State Farm's complete denial of Ms.
> Martin-Harker's UIM claim was substantially less than the full damages to which
> she would be entitled to recover from Mr. Waln as the tortfeasor, had he carried
> sufficient liability limits.  State Farm's explanation of why it would not pay UIM
> benefits was not reasonable in relation to the insurance policy, the facts, or
> applicable law.

---

[2] In Opinion 5, Mr. Sitcoff opines that it is industry standard for an insurer to
contact the insured and her medical providers directly to obtain information despite the
insured's representation by counsel and the insurer having been provided with medical
records.  By contrast, in Opinion 1, Mr. Sitcoff identified a UCSPA standard – that
insurers conduct a reasonable investigation based on all available information before
denying a claim – and compared that standard to specific instances of State Farm's
conduct to opine as to whether State Farm's conduct conformed to the UCSPA
standard.  *See Dale*, 2021 WL 1172574, at *3.  Thus, Opinion 1 is proper, while Opinion
5 is not.  *See id.*

Docket No. 69 at 9 (citing Docket No 69-1 at 21). State Farm argues that Mr. Sitcoff's

opinion is impermissible because it is "a conclusion of law drawn from application of law

to facts." *Id*. at 10.

Mr. Sitcoff relies on the following USCPA standard: "[f]ailing to promptly provide a

reasonable explanation of the basis in the insurance policy in relation to the facts or

applicable law for denial of a claim or for the offer of a compromise settlement." Colo.

Rev. Stat. § 10-3-1104(1)(h)(XIV).

The Court finds that Mr. Sitcoff's opinion ("State Farm's explanation of why it

would not pay UIM benefits was not reasonable in relation to the insurance policy, the

facts, or applicable law") is an ultimate legal conclusion. Docket No. 69-1 at 21. An

insurer violates Colo. Rev. Stat. § 10-3-1115 when it "unreasonably delay[s] or den[ies]

payment of a claim for benefits owed to or on behalf of any first-party claimant." Colo.

Rev. Stat. § 10-3-1115(1)(a). Furthermore, "an insurer's delay or denial was

unreasonable if the insurer delayed or denied authorizing payment of a covered benefit

*without a reasonable basis* for that action." Colo. Rev. Stat. § 10-3-1115(2) (emphasis

added). Thus, Mr. Sitcoff's opinion that State Farm's basis for its denial of UIM benefits

was unreasonable constitutes an impermissible opinion that State Farm was

"unreasonable or insufficient as a matter of law." *O'Sullivan,* 233 F. Supp. 3d at 929.

Ms. Martin-Harker argues that Mr. Sitcoff's opinion is admissible because the fact

that "State Farm offered a[n] explanation is itself not enough, the explanation must be

reasonable" to comport with § 10-3-1104(1)(h)(XIV). Docket No. 75 at 8. Her argument

does not address why Mr. Sitcoff's opinion does not constitute an ultimate legal

conclusion. In applying State Farm's conduct to § 10-3-1104, Mr. Sitcoff may "offer an

explanation . . . of how [State Farm's] communications with Plaintiff offering [her] UM/UIM benefits differed . . . from industry standards."  *O'Sullivan,* 233 F. Supp. 3d at 929.  However, he "may not offer an opinion that [State Farm's] information or explanation regarding UM/UIM benefits was ultimately insufficient, since that is a legal conclusion which the jury will be charged to resolve."  *Id.*

Furthermore, Mr. Sitcoff is not qualified to opine that "State Farm's complete denial of Ms. Martin-Harker's UIM claims was substantially less than the full damages to which she would be entitled to recover from Mr. Waln as the tortfeasor, had he carried sufficient liability limits."  Docket No. 69-1 at 21.  Mr. Sitcoff is not a medical causation expert and cannot speculate as to which of Ms. Martin-Harker's injuries and damages were caused by the December 21, 2021 accident.  *See O'Sullivan*, 233 F. Supp. 3d at 924 ("specialized knowledge" is required for "expert testimony" and "can be acquired through experience and training") (internal quotations and citation omitted). Accordingly, the Court will exclude Opinion 6 in its entirety.

### 7.  *Opinion 7*

> It is my opinion that in violation of industry standard, State Farm delayed and denied covered underinsured motorist benefits without a reasonable basis. Although the unreasonableness of State Farm's conduct in relation to applicable insurance industry standards is addressed in the paragraphs above, it's worth repeating here that State Farm has denied Ms. Martin-Harker the full amount of UIM benefits to which she is entitled without a reasonable basis.

Docket No. 69 at 10 (citing Docket No. 69-1 at 21).  State Farm argues that Mr. Sitcoff's opinion is inadmissible for its reasons discussed regarding Opinion 6.  *Id.*  As discussed in the Court's discussion regarding Opinion 6, Mr. Sitcoff's opinion – that State Farm did not have reasonable basis for its denial of Ms. Martin-Harker's UIM benefits –

constitutes an ultimate legal conclusion on whether State Farm acted unreasonably as a

matter of law.

Accordingly, the Court will exclude Opinion 7.


### 8.  Opinion 8

> Finally, it is my opinion that in violation of industry standard, State Farm willfully
> or recklessly disregarded the unreasonableness of its conduct and Ms. Martin-
> Harker's interests.  Indeed, it is difficult to reach any conclusion other than this.
> Industry standards require a prompt and thorough investigation, a reasonable
> explanation for denying coverage, benefits, or a reasonable settlement.  Under
> industry standards, policyholders are entitled to fair and equitable treatment, with
> reasonable explanations for any denial of benefits.  State Farm, however,
> disregarded these standards and ultimately made the decision to not pay any
> UIM benefits to Ms. Martin-Harker, an amount far below the amount of benefits
> that any reasonable insurance company would offer.

Docket No. 69 at 10 (citing Docket No. 69-1 at 21).  State Farm argues that Mr. Sitcoff's

opinion is inadmissible because it "contain[s] legal conclusions drawn from application

of law to facts, as well as opinion regrading Defendant's subjective intent." *Id*.  at 11.

Whether State Farm willfully or recklessly disregarded the unreasonableness of

its conduct is not relevant to a statutory bad faith claim, but is only relevant to a

common law bad faith claim.  "While first-party bad faith principles require a plaintiff to

establish that the insurer knew or recklessly disregarded the fact that its conduct was

unreasonable, . . . the statutory claim requires only that a first-party claim be denied

without a reasonable basis."  *Vaccaro v. Am. Fam. Ins. Grp.*, 275 P.3d 750, 756.

Because the Court dismissed Ms. Martin-Harker's common law bad faith claim, Mr.

Sitcoff's opinion as to whether State Farm willfully or recklessly disregarded the

unreasonableness of its conduct is irrelevant.  Docket No. 88 at 22.  Accordingly, the

Court will exclude Opinion 8.

### 9.  Opinion 9

This opinion, from Mr. Sitcoff's rebuttal report, responds to the report prepared by

Dr. Ming Xiao, an expert hired by State Farm to "reconstruct the dynamics of the

accident and to evaluate the motions and mechanisms that Ms. Martin-Harker would

have experienced in her body:"

> In my opinion, it is a violation of insurance industry standards for an insurance
> company to do an incomplete evaluation when the insurance company knows
> that there are outstanding questions that it needs answered (such as injury
> causation or mechanism of injury as noted by Ms. Kerns here), not hire any
> expert to resolve those issues, and simply wait to get sued and then complete its
> evaluation, which is exactly what State Farm has done here.
>
> Dr. Xiao's report confirms my opinions that State Farm's handling of Ms. Martin-
> Harker's UIM claim was below industry standard.  In my opinion, it is below
> industry standard for an insurance company to do an incomplete evaluation and
> if and when its [sic] gets sued, hire the necessary experts that should have been
> hired to assist in its evaluation.

Docket No. 69 at 11 (citing Docket No. 69-2 at 1-2).  State Farm argues that Mr. Sitcoff

cannot testify "regarding Defendant's litigation strategy and conduct as evidence of bad

faith."  *Id.*

Mr. Sitcoff identifies no generally accepted industry standard to support his

opinions.  He cites no case, whether in Colorado or elsewhere, recognizing such a

standard.  The Court has found no cases supporting this standard.  Thus, this opinion

appears to simply be the ipse dixit of the expert.

Moreover, Opinion 9 appears to contravene the general rule against admitting

evidence of an insurance company's legal strategy as a measure of its bad faith.  *See*

*Timberlake Constr. Co v. U.S. Fidelity and Guar. Co.,* 71 F.3d 335, 340 (10th Cir. 1995)

(applying Oklahoma law and holding that in the context of bad faith claims, where the

focus is "the insurer's knowledge and belief during the time the claim is being reviewed,

. . . the relevance of litigation conduct is severely diminished").  "Admitting a defendant insurer's litigation strategy as evidence of its bad faith 'could create potential conflicts with the attorney's litigation privilege' or 'result in ethical dilemmas for attorneys representing insurance companies.'"  *Etherton v. Owners Ins. Co.,* No. 10-cv-00892-PAB-KLM, 2013 WL 68702, at *6 (D. Colo. Jan. 7, 2013) (quoting *Parsons*, 165 P.3d at 817).  "It could also deter insurers 'from conducting a vigorous defense.'"  *Id.* (quoting *Parsons*, 165 P.3d at 819).

State Farm hired Dr. Xiao after litigation commenced.  Docket No. 69-2 at 1–2. Mr. Sitcoff opines that State Farm's retention of Dr. Xiao after Ms. Martin-Harker filed suit demonstrates that State Farm failed to meet industry standards by conducting "an incomplete evaluation" and only, "if and when it gets sued," did it "hire the necessary experts that should have been hired to assist in its evaluation."  *Id*. at 2.  Mr. Sitcoff also opines that State Farm's hiring of Dr. Xiao demonstrates that there were "outstanding questions that it need[ed] answered" and State Farm did not "hire any expert to resolve those issues," but rather "wait[ed] to get sued" to "complete its evaluation."  *Id*.  The Court finds that Mr. Sitcoff's opinion is not only speculative but also impermissibly opines on litigation conduct.  Accordingly, the Court will exclude Opinion 9 in its entirety.

IV.    **CONCLUSION**

Therefore, it is

**ORDERED** that Defendant's Corrected Motion to Exclude Opinions of Jeremy Sitcoff [Docket No. 69] is **GRANTED in part and DENIED in part**.

DATED March 26, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge